**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION**

DAMON MONTEZ WILLIS,

        Plaintiff,

vs.

JASON SMITH, PAT STEFLIK,
MATTHEW ROYSTER, and ELAINE
FRENCH,

        Defendants.

No. C 04-4012-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING PLAINTIFF'S
CLAIM FOR ATTORNEY FEES AND
EXPENSES**

_____

    In this action pursuant to 42 U.S.C. § 1983, plaintiff Damon Montez Willis asserted claims of violation of his constitutional rights by various officials at the Cherokee Mental Health Institute's Civil Commitment Unit For Sexual Offenders (CCUSO).[1] Somewhat more specifically, Willis alleged improper mail-handling policies and inadequate grievance procedures at the CCUSO arising from the handling by the defendants of a package containing a copy of the book "The Lie Behind The Lie Detector, 3rd digital edition," by George W. Maschke and Gino J. Scalabrini, and published by AntiPolygraph.org, and violation of his constitutional rights in his attempts to obtain the book. By order dated August 25, 2005, the court rejected in part and accepted in part the Report and Recommendation On The Merits filed by Magistrate Judge Paul A. Zoss on February 28, 2005 (docket no. 26). The court rejected Judge Zoss's determination that Willis is a

---

[1]Willis has been civilly committed to the CCUSO, upon the conclusion of his sentence for a sexually-based criminal offense, pursuant to an adjudication that he is a "sexually violent predator" within the meaning of IOWA CODE § 229A.2(11).

"prisoner" within the meaning of the PLRA as unnecessary to the disposition of Willis's claims, but otherwise accepted the Report and Recommendation. Consequently, the court ordered that judgment enter in favor of Willis and against the defendants on Willis's claim of violation of his constitutional rights in opening the package containing the book in question outside of his presence and in withholding the entirety of the book from him on the basis of the organization that published the book, and enjoined the defendants to provide plaintiff Willis with the copy of "The Lie Behind The Lie Detector, 3rd digital edition," by George W. Maschke and Gino J. Scalabrini, and published by AntiPolygraph.org., sent to him by Marsha Sherod, minus only Sections 3 and 4 and Appendices A, B, and F. However, the court directed that judgment enter in favor of the defendants and against Willis on Willis's claim that the defendants' grievance policies and procedures violated his constitutional rights and on Willis's claim that the defendants do not have the general right to make decisions based on treatment and security concerns with respect to printed materials to which they will allow the CCUSO patients to have access. Judgment entered accordingly on August 25, 2005.

After an extension of time to do so, Willis filed his October 6, 2005, Motion For Award Of Attorney Fees (docket no. 35), which is now before the court. Willis seeks $10,607 in attorney fees, for a total of 53.80 hours at an hourly rate of $200,[2] and $498 in expenses, plus interest from the date that the judgment became final. The defendants filed no resistance to Willis's motion for attorney fees and expenses.

---

[2]In the itemized bill attached to the fee claim, the hourly rate charged for certain items has been reduced, without explanation, which explains why the total fee claimed is $10,607 rather than $10,760 (53.80 x $200 = $10,760). The court assumes that the adjustments were not inadvertent and that counsel has claimed the rate he intended for the adjusted items.

The Eighth Circuit Court of Appeals recently summarized the standards for attorney fee awards in a civil rights case, such as this, as follows:

> Attorney's fees are within the broad discretion of the district court and will not be reversed absent an abuse of discretion. *See Harmon v. City of Kansas City*, 197 F.3d 321, 329 (8th Cir. 1999). Under 42 U.S.C. § 1988(b), a prevailing party in a § 1983 action is entitled to reasonable attorney's fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). "The starting point in determining attorney fees is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State University*, 295 F.3d 849, 851 (8th Cir. 2002).

*Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005); *Warnock v. Archer*, 397 F.3d 1024, 1026 (8th Cir. 2005) ( "The 'prevailing party' in a § 1983 action is generally entitled to 'a reasonable attorney's fee.'") (also quoting *Hensley*, 461 U.S. at 429); *Wheeler v. Missouri Highway & Transp. Comm'n*, 348 F.3d 744, 754 (8th Cir. 2003) (also noting that the "lodestar" method is the starting point for calculating a reasonable fee).

In determining the "reasonable hours" factor in the "lodestar" calculation, "[t]he onus is on the party seeking the award to provide evidence of the hours worked." *Wheeler*, 348 F.3d at 754. "The district court should exclude hours that were not reasonably expended." *Id.* Thus, the district court may consider the time and labor required, the novelty and difficulty of the issues, and whether all of the hours, including hours for depositions, were consequently warranted, and adjust the hours claimed accordingly. *Id.* Here, however, the court finds that no adjustment of claimed hours is required, because the court's review of the itemized hours, both for particular activities and in total, shows that the hours claimed were reasonably expended, considering, among other things, the nature and difficulty of the issues presented. *Id.* The court also finds that

time claimed has been adjusted appropriately where the plaintiff's attorney combined travel on behalf of more than one client.

Turning to the second step in the "lodestar" calculation, determination of a reasonable hourly rate, "[t]he onus is [also] on the party seeking the award to provide evidence of . . . the rate claimed." *Id.* The Eighth Circuit Court of Appeals has explained that, "[w]hen determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig*, 415 F.3d at 825 (citing *Warnock*, 397 F.3d at 1027). In *Hanig*, the appellate court found that the district court had considered the range of hourly rates in recent fee awards in the jurisdiction, the plaintiff's attorney's customary hourly rate, and the plaintiff's attorney's experience as compared to others who had been awarded fees at comparable hourly rates. *Id.*; *Warnock*, 397 F.3d at 1027 (considering similar factors, and affirming an hourly rate of $200). Here, the court finds that an hourly rate of $200, as claimed by the plaintiff, is also reasonable, when compared with the prevailing hourly rates of attorneys in Iowa, the hourly rates that this court has awarded in comparable civil rights litigation, and the extensive experience and expertise of plaintiff's counsel with civil rights litigation. *Id.* Therefore, the court finds that it is appropriate to award fees at the claimed hourly rate of $200.

Because a party must be a "prevailing party" to obtain an award of attorney fees, *see* 42 U.S.C. § 1988(b), the Eighth Circuit Court of Appeals has recognized that "the degree of [the plaintiff's] success is 'the most critical factor' in determining a reasonable fee award." *Warnock*, 397 F.3d at 1026 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114-15 (1992)). Consequently, "the district court should adjust the fee upward or downward on the basis of the results obtained." *Wheeler*, 348 F.3d at 754 (citing *Hensley*, 461 U.S. at 434; *Fish*, 295 F.3d at 852). More specifically, where a plaintiff prevails on some, but not all, of the issues he or she asserts, the court may consider the significance of the issue

or issues on which the plaintiff prevailed and whether or not a public purpose was served or relief obtained that applied to others besides the plaintiff in deciding whether or not the plaintiff was a "prevailing party" qualified to receive an award of attorney fees. *Warnock*, 397 F.3d at 1026. The court must then determine whether or not to adjust the fee award for "partial success," but "[t]here is 'no precise rule or formula' for making fee determinations in cases with only partial success." *Id.* (quoting *Hensley*, 461 U.S. at 436-37). Indeed, "where . . . the court cannot separate out which hours were billed for which issues, [the court] 'may simply reduce the award to account for the [plaintiff's] limited success.'" *Id.* (again quoting *Hensley*, 461 U.S. at 436-37). On the other hand, no reduction for "partial success" is necessarily required, where the plaintiff nevertheless obtained "excellent results," and the unsuccessful claim cannot be easily separated from the successful claim. *Hensley*, 461 U.S. at 434-35; *accord Jenkins v. Missouri*, 127 F.3d at 709, 716 (8th Cir. 1997). Here, it is true that Willis did not obtain success on all of the claims that he asserted. *Warnock*, 397 F.3d at 1026 (degree of success is "the most critical factor" in determining a reasonable fee award); *Wheeler*, 348 F.3d at 754 (fees should be adjusted upward or downward on the basis of results obtained). However, the hours expended upon unsuccessful claims cannot be easily separated from the hours expended on successful claims, and more importantly, the plaintiff's result was "excellent" in that it vindicated his right to receive the publication in question, albeit in edited form, which was the crux of his lawsuit. Therefore, the court finds that no general reduction is appropriate. *Hensley*, 461 U.S. at 434-35 (partial success does not require a fee reduction if the plaintiff nevertheless obtained an "excellent result"); *but see Warnock*, 397 F.3d at 1026 (the entire award may be reduced for "partial success" when the unsuccessful claim cannot be easily separated from the successful claim). Indeed, the defendants apparently

do not quibble with the degree of the plaintiff's success or any other aspect of his fee claim, because they did not file a resistance to his fee claim.

Finally, Rule 54(b) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1920, and *Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996), authorize awards for costs and reasonable out-of-pocket expenses. Here, the court finds that plaintiff's counsel has incurred reasonable, indeed modest, costs and expenses, including travel expenses, in litigating this matter, in light of the fact that counsel was in Iowa City and the plaintiff was in custody in Cherokee. The court also finds that plaintiff's counsel has made appropriate adjustments in his claim for expenses incurred while traveling on behalf of more than one client. Thus, the court finds that an award of the claimed costs and expenses of $498 is also warranted.

THEREFORE, plaintiff Willis's October 6, 2005, Motion For Award Of Attorney Fees (docket no. 35) is **granted**. Plaintiff Willis is awarded $10,607 in attorney fees and $498 in expenses, plus interest from the date that the judgment became final.

**IT IS SO ORDERED.**

**DATED** this 18th day of January, 2006.

MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA